**Odell EPPS, Plaintiff-Respondent,**

v.

**Lloyd RAGSDALE, Defendant-Appellant.**

**No. 33035.**

St. Louis Court of Appeals.

Missouri.

June 14, 1968.

Hugh E. Gibbons, Justin C. Cordonnier, Hocker, Goodwin & MacGreevy, St. Louis, for appellant.

Gregg William Keegan, St. Louis, for respondent.

CLEMENS, Commissioner.

The plaintiff, Mrs. Odell Epps, got a $2,000 verdict and judgment. This, on her res ipsa loquitur submission for damages resulting from scalp burns and loss of hair after she got a permanent wave in defendant Lloyd Ragsdale's beauty shop. He appeals.

The primary issue is whether plaintiff's evidence—that the defendant selected and controlled the compounds and instruments used in treating her hair, and that her scalp was blistered and her hair fell out after the treatment—entitled her to go to the jury on a res ipsa loquitur submission. For reasons to be given, we hold that theory was proper but find there was prejudicial error in the form of plaintiff's submission.

The verdict-consistent evidence (disproving the theory that blondes have more fun): Mrs. Epps responded to Mr. Ragsdale's handbill advertising "guaranteed" permanent waves. At his shop she was received by one of his licensed beauty operators, Miss Suzie Vaughn. They talked about the condition of Mrs. Epps' hair, which had recently been bleached from brown to blonde. In permanent waving, bleached hair requires special attention and a milder permanent wave compound than unbleached hair. Mrs. Epps told Miss Vaughn, "If you think a permanent would damage my hair in any way, I don't want one." After shampooing Mrs. Epps' hair Miss Vaughn said that her hair "would take a beautiful permanent." Miss Vaughn wrapped Mrs. Epps' hair on permanent wave rods (curlers) and selected and applied a permanent wave compound. Miss Vaughn, testifying for the defendant, said there are several kinds of this compound, some more caustic than others, but she did not recall the kind she used on Mrs. Epps; that the compound can destroy hair and cause scalp burns. After leaving this caustic compound on Mrs. Epps' hair for awhile Miss Vaughn rinsed it off and put on a neutralizer. She rinsed her hair again, set it on brush-rollers, and put her under an electric dryer. According to Miss Vaughn, when testifying for the defendant, she controlled the time and temperature of the drying process and she left Mrs. Epps under the dryer for half an hour. Mrs. Epps said that after sitting

under the dryer about forty minutes she complained that her scalp was burning; that Miss Vaughn looked at her hair, said it was still wet, and kept her under the dryer for another half hour. Miss Vaughn then tried to remove the brush-rollers but they were so enmeshed in her hair that she had to cut them out with a scissors. Miss Vaughn saw that Mrs. Epps' hair had become unusually stiff and brittle, so she trimmed off the ends, where the damage was most severe. While combing and trimming Mrs. Epps' hair, much of it broke off. Miss Vaughn applied a lanolin conditioner (softening agent) and gave Mrs. Epps a supply of it to use at home. When Mrs. Epps left the shop her scalp was still burning.

The next morning when Mrs. Epps brushed her hair it all came out, leaving a mere quarter-inch stubble. Her scalp was red and blistered. She became nervous and distraught, and embarrassed in public and at work. She bought a wig but it was uncomfortable to wear on her burned scalp. A month later Mrs. Epps got one medical treatment for scalp burns and another for nervousness. Hypothetical medical opinion was that the permanent wave treatment had caused both these conditions and the loss of hair.

We hold that this evidence warranted a res ipsa loquitur submission. The elements of that doctrine are laid down in McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557[1], 92 ALR 641: the instrumentalities involved must be under the defendant's management and control, the defendant must have superior knowledge or means of information about the cause of the occurrence, and the occurrence resulting in injury must be one that does not ordinarily happen when those in charge use due care.

Plaintiff's evidence was abundant on the first two elements: The defendant's beautician, Miss Vaughn, selected the type of permanent wave compound and neutralizer and controlled the means and time of applying them; she controlled the intensity and time of heat applied in drying plaintiff's hair. Mrs. Epps was but a passive supplicant. So, the instrumentalities were under the defendant's control. Further, Miss Vaughn's training and experience as a beautician, and the fact that Mrs. Epps could have little knowledge of what Miss Vaughn was doing, supplied the element of the defendant's superior knowledge of the cause of the occurrence.

The defendant's challenge is not leveled against these two elements but against the basic res ipsa element: whether injuries like plaintiff's ordinarily happen when due care is used. This is a question of law since it is a judicial function to determine whether a certain set of circumstances does, as a matter of law, permit a certain inference. Parlow v. Dan Hamm Drayage Co., Mo., 391 S.W.2d 315[10, 11]. The question is answered when the court can take judicial notice, based on common knowledge and experience, that such an injury probably would not have occurred but for negligence in some form. Thus, a court judicially knows that an automobile does not ordinarily run off the highway unless its driver was negligent in some way. The basis of such an allowable inference is the "doctrine of probabilities." Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001[1, 2]; Frazier v. Ford Motor Co., 365 Mo. 62, (banc), 276 S.W.2d 95[2]; and Russell v. St. Louis & S.F. Ry. Co., Mo.App., 245 S.W. 590[3].

Courts have said, on different but similar facts, that permanent waves do not ordinarily cause scalp burns and hair loss when carefully applied by a beautician. See Glossip v. Kelly, 228 Mo.App. 392, 67 S.W.2d 513, and Givens v. Spalding Cloak Co., 228 Mo.App. 169, 63 S.W.2d 819. In those cases the plaintiffs, injured by permanent wave treatments, properly submitted on res ipsa loquitur. Logic compels the same result here. It is common knowledge that many women have permanent wave treatments without damage to their

scalps or hair; it is also commonly known that human hair and scalps are sensitive to caustic compounds and to heat. These two commonly known facts lead to a third: permanent wave treatments do not ordinarily cause scalp burns and hair loss of the severity shown here if carefully performed by a beautician. This fact, plus the defendant's exclusive control and superior knowledge, satisfies the "doctrine of probabilities" to the extent that the trial court did not err by permitting the jury, if it was so persuaded, to infer negligence from the facts of the occurrence.

In arguing against applying the res ipsa loquitur doctrine here the defendant stresses Hasemeier v. Smith, Mo. (banc), 361 S.W.2d 697[3, 4]. There the doctrine was denied in a malpractice case charging negligent diagnosis by the defendant physician whose patient died under anesthesia during Caesarean childbirth. The court held that common knowledge did not extend to the intricate subjects of medical negligence in diagnosis, childbirth and anesthetics. That conclusion does not control the simpler facts in our case.

Having determined that plaintiff did make a submissible res ipsa case, we look to defendant's several charges that the trial court erred in giving plaintiff's verdict-directing and definition instructions. The instructions, with our emphasis added:

### Instruction No. 3

"Your verdict must be for plaintiff if you believe:

"First, defendant was the owner of a beauty shop and did advertise himself as a cosmetologist or hairdresser and did employ operators licensed by State Law qualified in hair waving.

"Second, that plaintiff did present herself for a permanent wave to defendant and defendant did undertake to give said permanent waving by an operator and that the control of said permanent waving and the manner of giving was within the control of the defendant wholly and exclusively and that plaintiff was burned about the scalp and hair and did lose large amounts of hair,

"Third, such burning of the scalp and hair was the direct result of defendant's *negligence,* and

"Fourth, as a direct result of such *negligence* the plaintiff sustained damage."

### Instruction No. 2

"The term *'ordinary care'* as used in these instructions means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances."

The inconsistency is flagrant. The verdict director's "Third" and "Fourth" paragraphs hypothesized negligence. But instead of defining negligence the plaintiff's definition instruction did just the opposite—it defined ordinary care, a term used nowhere in the instructions. MAI 11.02(I) defines negligence and was the applicable instruction. Civil Rule 70.01(b) (c), V.A.M.R. declares that when there is an applicable MAI it is error to give any other instruction. See Brown v. Bryan, Mo., 419 S.W.2d 62[4].

Such an error is presumptively prejudicial, and on appeal the proponent of an erroneous instruction has the burden of establishing its nonprejudice. Murphy v. Land, Mo., 420 S.W.2d 505[4]; Brown v. St. Louis Public Service Co., Mo. (banc), 421 S.W.2d 255[3]. Plaintiff has not shown nonprejudice and could hardly do so in view of the confusion created by omitting an applicable definition and defining its inappropriate counterpart. For this error we must grant a new trial.

The defendant levels a further charge at plaintiff's verdict director. It was an obvious modification of MAI 26.02 (1), Verdict Directing—Res Ipsa Loquitur, although it was not so marked in the trial

court. (Civil Rule 70.01[d].) We overlook plaintiff's failure to mark and consider defendant's charge that the modification failed to comply with Civil Rule 70.01(e). That rule declares that when an MAI must be modified to fairly submit the issues—and modification was necessary here—the modified instruction shall be simple, brief, impartial, free from argument, and shall not submit detailed, evidentiary facts. Furthermore, it is unnecessary to hypothesize conceded facts (MAI p. xxxi); doing so in an MAI robs the instruction of its required brevity and simplicity. Paragraphs "First" and "Second" of plaintiff's verdict director are too wordy to comply with the modification rule. Under MAI the acid test of an instruction is whether it follows the substantive law in hypothesizing the ultimate disputed facts, cut to the bare essentials; it should be all muscle and no fat.

■■■ In view of defendant's admission that his operator did give plaintiff the permanent wave, it would suffice to hypothesize: that defendant's operator had management and control of the materials and equipment used in giving plaintiff her permanent wave, that in doing so plaintiff's hair and scalp were injured, that such injuries were the direct result of the operator's negligence, and that as a direct result of such negligence the plaintiff sustained damage.* On retrial plaintiff should consider defendant's criticisms when drafting her verdict director.

■■■ We reject defendant's further complaint that plaintiff should have added her definition instruction as another paragraph of the verdict director rather than putting it in a separate instruction. Such incorporation is proper only when the defined term appears in just one instruction. Here the defendant's converse instruction also used the term "negligence". So the definition should be in a separate instruction. See "Notes on Use", MAI 11.02; and the illustrations at MAI 31.00.

The defendant also raises four points about closing argument. He contends plaintiff's counsel went outside the record in arguing: the history of the res ipsa loquitur doctrine, what he had read about the chemical content of caustic permanent wave compounds, the historical practice of head shaving as punishment of women, and the sympathy evoked among plaintiff's fellow employees by her baldness. In view of our remand on other grounds we need not analyze the prejudicial effect of these arguments. But if the case is retried, plaintiff's counsel should consider defendant's criticisms and the prejudicial effect of argument unsupported by evidence. Brown v. Hannibal & St. Joseph R.R. Co., 66 Mo. 588, l.c. 599; Zoeller v. Terminal Railroad Ass'n of St. Louis, Mo.App., 407 S.W.2d 73[5, 6].

The judgment must be reversed and the cause remanded for a new trial.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause is remanded for a new trial.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.

---

* The element of defendant's superior knowledge is implicit in the admitted fact of the operator's training and the required finding of management and control. Compare Brown v. Bryan, Mo., 419 S.W.2d 62, 67.